UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CAVAZOS, | No. 2:24-cv-0482 AC P |
| Plaintiff, | |
| v. | ORDER |
| C. HERNANDEZ, et al., | |
| Defendants. | |

Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer. He has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915. Plaintiff has submitted a declaration showing that he cannot afford to pay the entire filing fee. See 28 U.S.C. § 1915(a)(2). Accordingly, plaintiff's motion to proceed in forma pauperis is granted.[1]

I.  Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A

---

[1] This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum. 28 U.S.C. § 1914(a). As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account. See 28 U.S.C. § 1915(b)(1). A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account. These payments will be taken until the $350 filing fee is paid in full. See 28 U.S.C. § 1915(b)(2).

1

claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

II.     Factual Allegations of the Complaint

The complaint alleges that defendants Willard, Herrera, and Does 4 (correctional officer) and 5 (sergeant) violated plaintiff's rights under First, Fourth, and Eighth Amendments.[2] ECF No. 1. On September 30, 2024, plaintiff filed a Notice of Voluntary Dismissal for Claims One through Five and Eight. ECF No. 7. Accordingly, this order only addresses Claims Six, Seven, Nine, and Ten.[3]

---

[2] Although plaintiff also cites the Sixth and Fourteenth Amendments, he does not allege any facts that would implicate a Sixth Amendment violation and any claims that would implicate the Fourteenth Amendment are more properly addressed under the Fourth and Eighth Amendments. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

[3] The Clerk of the court will be directed to terminate defendants Hernandez, Angelo, Gomez, and Does 1-3.

In support of Claims Six and Seven, plaintiff alleges that on separate dates, about a month apart, Doe 4 and Willard, each narrowly opened plaintiff's cell door, ordered plaintiff to squeeze in sideways, and then deliberately closed the door on his chest and trapped him as he attempted to enter. Id. at 9-10. Defendants then laughed at plaintiff and refused to immediately release the door to free him, causing chest, back, and rib pain, as well as mental anguish. Id.

In support of Claims Nine and Ten against Herrera and Doe 5, plaintiff alleges the following. On February 16, 2023, when plaintiff made a request, correctional officer Herrera threaten him with pepper spray, ordered him to the floor, and cuffed him behind his back, despite plaintiff advising Herrera that he was under doctor's order to only be restrained using waist chains. Id. at 11-12. When the nurse and Doe 5 arrived, plaintiff complained of shoulder pain. Id. at 12. The nurse informed Herrera and Doe 5 that plaintiff was under special cuffing orders. Id. Nonetheless, Herrera and Doe 5 kept plaintiff handcuffed behind his back. Id. When Herrera tried to stand plaintiff up to take him outside to the sallyport cages, plaintiff fell over in pain. Id. Herrera pounced on plaintiff's back, twisted his wrists, and pinned him on the floor for several minutes. Id. Herrera then stood plaintiff up and escorted him outside. Id. Once outside, in retaliation, Doe 5 ordered plaintiff to strip down for a search. Id. at 13. Because it was too cold to do a strip search outside at night during the winter, plaintiff asked to conduct the search inside. Id. Doe 5 refused and said he would just cut off all of plaintiff's clothes, which he proceeded to do before plaintiff even had a chance to try to comply. Id.

It is unclear when, but sometime during the strip or the search, Doe 5 touched plaintiff's buttock and genital area. Id. at 14. When Doe 5 took off plaintiff's shoes, he caused plaintiff to lose his balance and hit his head against the cage. Id. Doe 5 then forced plaintiff to put on dirty state issued boxers and a T-shirt and to stand in the cold for two hours, ignoring plaintiff's requests for medical attention for his shoulder, back, side, wrist, and head, and for a blanket to protect him from the cold. Id. Plaintiff complains that Herrera's and Doe 5's actions caused him bodily harm, early stages of hypothermia, sexual assault, mental anguish and anxiety, anger, humiliation, and nightmares. Id. at 12-14.

////

### III. Claims for Which a Response Will Be Required

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated the following claims: Eighth Amendment excessive force claims against Willard, Doe 4, and Herrera; Eighth Amendment failure to protect claim against Doe 5 for failure to intervene when Herrera used excessive force against plaintiff in Doe 5's presence; Fourth and Eighth Amendment claims against Doe 5 for an unreasonable and harassing strip search; and Eighth Amendment deliberate indifference to medical needs claim against Doe 5. However, the court notes that the excessive force claims against Willard and Doe 4 are unrelated to the claims against Herrera and Doe 5. Therefore, if plaintiff wants to proceed with all of these claims, he will need to pursue them in two separate cases.

### IV. Failure to State a Claim

The complaint lacks factual allegations to state a claim against Doe 5 for a First Amendment retaliatory search. Plaintiff has not alleged what the search was in retaliation for. In other words, plaintiff fails to allege he was engaged in protected conduct and retaliated against because of his protected conduct.

It appears to the court that plaintiff may be able to allege facts to fix this problem. Therefore, plaintiff has the option of filing an amended complaint.

### V. Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately on his excessive force claims against Willard, Doe 4, and Herrera; and unreasonable and harassing strip search, failure to protect, and deliberate indifference to medical needs claims against Doe 5. By choosing this option, plaintiff will be agreeing to voluntarily dismiss his First Amendment retaliatory search claim against Doe 5, in addition to already having withdrawn claims one through five and eight against defendants Hernandez, Angelo, Gomez, and Does 1-3. Plaintiff's claims against Willard and Doe 4 will be *severed* from the claims against Herrera**

1  **and Doe 5.  The Clerk of the court will be directed to open a separate action and assign the**
2  **undersigned to that case.  Plaintiff will be responsible for the filing fees in both cases.  The**
3  **court will then proceed to immediately serve the complaint and order a response from**
4  **defendants Willard and Herrera.  Service of process for Does 4 and 5 will not be ordered**
5  **until such time as plaintiff has: 1) identified them by their real name through discovery;**
6  **and, 2) filed a motion to amend the complaint to substitute their real name.**

7  **The second option available to plaintiff is to file an amended complaint to fix the**
8  **problems described in Section IV against defendant Doe 5.  If plaintiff chooses this option,**
9  **plaintiff should keep in mind the rules about joinder.  If he files an amended complaint, he**
10 **should either allege facts showing the claims and defendants are properly joined *or* choose**
11 **which claims he wants to pursue in this action by amending the complaint accordingly and**
12 **file the other claims in a new, separate action, if he still wants to pursue them.  If the**
13 **complaint includes misjoined claims or defendants, the court will sever the misjoined claims**
14 **and defendants and plaintiff will be responsible for the filing fees in both cases.  If plaintiff**
15 **elects this option, the court will set a deadline in a subsequent order to give plaintiff time to**
16 **file an amended complaint.**

17  VI.    <u>Plain Language Summary of this Order for Party Proceeding Without a Lawyer</u>

18  Some of the allegations in the complaint state claims against the defendants and some do
19  not.  You have stated claims against Willard, Doe 4 and Herrera for excessive force, and against
20  Doe 5 for an unreasonable and harassing search, failure to protect, and deliberate indifference to
21  your medical needs.  You have not stated any other claims against any defendants.  Additionally,
22  not all of your claims are related or against the same defendants.

23  You have a choice to make.  You may either proceed immediately: (1) against Willard,
24  Doe 4, and Herrera on your excessive force claims; and against Doe 5 for an unreasonable and
25  harassing search, failure to protect, and deliberate indifference to your medical needs; **or** (2) try to
26  amend the complaint.  To decide whether to amend your complaint, the court has attached the
27  relevant legal standards that may govern your claims for relief.  <u>See</u> Attachment A.  Pay
28  particular attention to these standards if you choose to file an amended complaint, and as noted

5

above, extra special attention to when claims against different defendants can be brought in the same case.

VII.     CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3. Plaintiff has voluntarily withdrawn Claims 1-5 and 8 against defendants Hernandez, Angelo, Gomez, and Does 1-3. ECF No. 7. These claims and defendants are therefore dismissed without prejudice and the Clerk of the court is directed to terminate defendants Hernandez, Angelo, Gomez, and Does 1-3.

4. Plaintiff does not state cognizable First, Sixth, and Fourteenth Amendment claims against any defendant.

5. Plaintiff has the option to proceed immediately on his Fourth and Eighth Amendment claims against defendants Willard, Herrera, Does 4 and 5 as set forth in Sections III and V above, or to file an amended complaint.

6. **Within 21 days** from the date of this order, **plaintiff shall complete and return the attached Notice of Election form** notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

7. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened, will sever the claims against Willard and Doe 4 from the claims against Herrera and Doe 5, and direct the clerk to open a separate case for the claims against Herrera and Doe 5 and assign the new case to the undersigned. The court will also

////

////

////

1 | recommend dismissal without prejudice of plaintiff's First, Sixth and Fourteenth Amendment
2 | claims against all defendants.
3 | DATED: December 27, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CAVAZOS,<br><br>             Plaintiff,<br><br>      v.<br><br>C. HERNANDEZ, et al.,<br><br>             Defendants. | No.  2:24-cv-0482 AC P<br><br>NOTICE OF ELECTION |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his excessive force claims against Willard, Doe 4, and Herrera; and unreasonable and harassing strip search, failure to protect, and deliberate indifference to medical needs claims against Doe 5 without amending the complaint.  Plaintiff understands that by choosing this option, the remaining First, Sixth, and Fourteenth Amendment claims will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.


DATED:_____

                                                            Robert Cavazos
                                                            Plaintiff pro se

1

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I.   Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

II.   Legal Standards Governing Substantive Claims for Relief

A. Doe Defendants

Although the use of Doe defendants is acceptable to withstand dismissal at the initial screening stage, service of process for these defendants will not be ordered until such time as plaintiff has: 1) identified them by their real names through discovery; and, 2) filed a motion to amend the complaint to substitute their real names. See Mosier v. Cal. Dep't of Corr. & Rehab., 2012 WL 2577524, at *3, 2012 U.S. Dist. LEXIS 92286, at * 8-9 (E.D. Cal. July 2, 2012), Robinett v. Correctional Training Facility, 2010 WL 2867696, at *4, 2010 U.S. Dist. LEXIS 76327, at * 12-13 (N.D. Cal. July 20, 2010). Additionally, to state a claim against Doe

defendants, plaintiff must allege conduct by each specific Doe defendant to establish liability under 42 U.S.C. § 1983.  This means that plaintiff should identify each Doe defendant separately (e.g., Doe 1, Doe 2, etc.) and explain what each individual did to violate his rights.

### B. Joinder of Claims and Parties

A plaintiff may properly assert multiple claims against a single defendant in a civil action. Fed. Rule Civ. P. 18.  In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  However, unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)." Id.

### C. Excessive Force

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which has been defined as "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id. at 7 (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Id.  The malicious and sadistic use of force to cause harm always violates contemporary

standards of decency in violation of the Eighth Amendment.  Whitley, 475 U.S. at 327.

### D. Failure to Protect

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).  Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted).  The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.  He must then fail to take reasonable measures to lessen the substantial risk of serious harm.  Id. at 847.  Negligent failure to protect an inmate from harm is not actionable under § 1983.  Id. at 835.

Police officers have a duty to intervene when fellow officers violate the constitutional rights of a suspect or other citizen.  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation omitted).  At the same time, however, they may only be held liable for failure to intervene if they had an opportunity to do so.  See id. at 1289-90 (citing Bruner v. Dunaway, 684 F.2d 422, 426-27 (6th Cir. 1982) (holding officers who were not present at time of alleged assault could not be held liable in a Section 1983 action)).  The failure to intervene violates a prisoner's Eighth Amendment rights.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

### E. Deliberate Medical Indifference

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991)).  First, the plaintiff must

1  show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could
2  result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citing
3  Estelle, 429 U.S. at 104). "Examples of serious medical needs include '[t]he existence of an
4  injury that a reasonable doctor or patient would find important and worthy of comment or
5  treatment; the presence of a medical condition that significantly affects an individual's daily
6  activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-32 (citing
7  McGuckin, 974 F.2d at 1059-60).

8      Second, the plaintiff must show the defendant's response to the need was deliberately
9  indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act
10  or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the
11  indifference. Id. Under this standard, the prison official must not only "be aware of facts from
12  which the inference could be drawn that a substantial risk of serious harm exists," but that person
13  "must also draw the inference." Farmer, 511 U.S. at 837. This "subjective approach" focuses
14  only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely
15  negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152
16  F.3d 1124, 1130 (9th Cir. 1998) (citing Estelle, 429 U.S. at 105-106). Furthermore, mere delay of
17  medical treatment, "without more, is insufficient to state a claim of deliberate medical
18  indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).
19  Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the
20  prisoner must show that the delay caused "significant harm and that Defendants should have
21  known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

22      F.  Strip Searches

23      The Fourth Amendment protects against unreasonable searches, and that right is not lost
24  to convicted inmates. Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993). However,
25  "incarcerated prisoners retain a limited right to bodily privacy." Michenfelder v. Sumner, 860
26  F.2d 328, 333 (9th Cir. 1988) (emphasis added).

27      A detention facility's strip-search policy is analyzed using the test for reasonableness
28  outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches."

Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting Bell, 441 U.S. at 558). Under Bell, the court must balance "the need for the particular search against the invasion of personal rights that the search entails." 441 U.S. at 559. In order to do so, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

"Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process," and the Supreme Court has held that all detainees, when joining a general detained population, can be subject to strip searches even without reasonable suspicion that a specific individual is concealing weapons or other contraband. Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 30-39 (2012). Further, strip searches that are limited to "visual inspection," even if "invasive and embarrassing," can be resolved in favor of the institution. Bull, 595 F.3d at 975 (holding that visual strip searches that are held in a "professional manner and in a place that afforded privacy" and done to prevent the smuggling of contraband did not violate Fourth Amendment). However, searches done for the purpose of harassment are not constitutionally valid—the Supreme Court has held that "intentional harassment of even the most hardened criminals cannot be tolerated" by the Fourth Amendment's protections, and that they may even violate the Eighth Amendment. Hudson v. Palmer, 468 U.S. 517, 528, 530 (1984). Strip searches where "a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner," Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020), violate both the Fourth and Eighth Amendments.

### G. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal. Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). An assault for filing inmate grievances may constitute an adverse action. See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (recognizing an arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault as retaliation for filing inmate grievances).

### H. Sixth Amendment

The Sixth Amendment by its express terms guarantees the right to counsel in criminal prosecutions. Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) (citing U.S. Const. amend. VI). This includes the right of an inmate to "communicate candidly and confidentially with his lawyer." Id. at 910. A plaintiff alleging a Sixth Amendment claim must also demonstrate an actual injury, such as a chilling of the "right to privately confer with counsel." Id. at 911.

There is no Sixth Amendment right to counsel in civil proceedings. See United States v. $292,888.04 in U.S. Currency, 54 F.3d 564, 569 (9th Cir. 1995).

### I. Fourteenth Amendment - Equal Protection Clause

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all similarly situated people equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, a plaintiff may state an equal protection claim if he shows similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate government purpose. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

### J. Fourteenth Amendment - Due Process Clause

The Fourteenth Amendment prohibits the state deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To warrant protection under this clause, a plaintiff must establish that their life, liberty, or property interest is at stake. Tellis v.

1  Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).  In the prison context, a protected liberty interest
2  may arise from the Constitution itself or from state policies and regulations.  Sandin v. Conner,
3  515 U.S. 472, 484 (1995).  Where a liberty interest is created by state policies or regulations, it is
4  "generally limited to freedom from restraint which . . . imposes atypical and significant hardship
5  on the inmate in relations to the ordinary incidents of prison life."  Id.